UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATIE SHAK,<br><br>                                    Plaintiff,<br><br>v.<br><br>USI INSURANCE SERVICES, LLC, a limited liability company; DUKE TOMEI, an individual; and DOES 1 through10, inclusive,<br><br>                                    Defendants. | Case No.:  21-cv-01631-AJB-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO REMAND; AND**<br><br>**(2) DENYING DEFENDANTS' MOTION TO DISMISS AS MOOT**<br><br>**(Docs. No. 11, 13)** |

Before the Court is Plaintiff Katie Shak's ("Shak") motion to remand, (Doc. No. 11), and Defendants USI Insurance Services, LLC ("USI") and Duke Tomei's ("Tomei") (collectively, "Defendants") motion to dismiss, (Doc. No. 13). The Court has reviewed the parties' moving papers. For the reasons set forth below, the Court **GRANTS** Shak's motion to remand and **DENIES AS MOOT** Defendants' motion to dismiss.

## I. BACKGROUND[1]

This is an employment discrimination, retaliation, wrongful termination, and hostile work environment action under California law brought by Shak against her former employer, USI, and her former supervisor, Tomei. (Doc. No. 8, FAC at 1–2.) Shak was employed as a Producer of USI's commercial insurance lines from May 2017 until her termination on August 14, 2020. (*Id.* at ¶¶ 16, 37.) During this time, Shak reported to Dennis Bass ("Bass"), the SVP Commercial Lines Practice Leader. (*Id.* at ¶ 18.) In 2019, Tomei transferred to Shak's region as the Regional Commercial Lines Practice Leader, becoming Bass's supervisor. (*Id.*) Shak is a single woman who alleges that under Tomei's leadership, she experienced "unwanted harassing conduct based on her gender and marital status, causing a hostile or abusive work environment." (*Id.* at ¶ 140.) Specifically, Shak alleges, among other things, that Tomei made offensive comments about her gender, required her to team up with a male counterpart on her accounts, removed her from new business accounts, rejected her ideas and opinions, and placed her on a Performance Improvement Plan ("PIP") holding her to a different standard than her male colleagues. (*Id.* at ¶¶ 18–35.)  Shak further alleges a female colleague was also treated differently by Tomei due to her gender. (*Id.* at ¶ 27.)  On August 14, 2020, USI terminated Shak's employment due to "poor performance." (*Id.* at ¶ 37.)

On August 9, 2021, Shak filed the original complaint in this action in San Diego County Superior Court against all Defendants, alleging claims of discrimination and retaliation. On September 16, 2021, Defendants removed the action to federal court, asserting that this Court has diversity jurisdiction. (Doc. No. 1 at 3.) Although Shak and Tomei are both citizens of California, USI contends Tomei was fraudulently joined for the sole purpose of destroying diversity. (*Id.* at 4–5.) Defendants argue that Tomei's citizenship should be disregarded in assessing whether diversity jurisdiction exists. (*Id.*)

---

[1] The Court takes the following facts from Shak's First Amended Complaint ("FAC").

On October 6, 2021, Shak filed a FAC, adding a cause of action for hostile work environment and dismissing Tomei from the other causes of action. (Doc. No. 8, FAC at 19–22.) On October 15, 2021, Shak filed a motion to remand, arguing that Defendants failed to carry their burden of establishing that the parties are completely diverse. (Doc. No. 11-1.) Defendants subsequently filed a motion to dismiss Shak's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. No. 13.) The motions are fully briefed. This Order follows.

## II.  LEGAL STANDARD

The right to remove a case to federal court is entirely a creature of statute. *See Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove an action when a case originally filed in state court presents a federal question, or is between citizens of different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C. §§ 1441(a), (b); 28 U.S.C. §§ 1331, 1332(a). "[J]urisdiction founded on [diversity] requires that parties be in complete diversity and the amount in controversy exceed $75,000." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam); *see* 28 U.S.C. § 1332(a)(1). Complete diversity requires that each plaintiff's citizenship is diverse from that of each named defendant. 28 U.S.C. §§ 1332(a)(1), 1332(c)(1); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 n.3 (1996).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam) (citations omitted). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.*

## III.  DISCUSSION

Shak alleges the instant action must be remanded because Shak and Tomei are both citizens of California, and thus, there is no complete diversity for purposes of subject matter jurisdiction. (Doc. No. 11-1 at 6.) Defendants do not dispute that Tomei is a citizen of

California. Rather, Defendants contend that complete diversity nevertheless exists because Tomei's citizenship can be disregarded because he was fraudulently joined in this action and is therefore a sham defendant. (Doc. No. 13-1 at 6.)

### A. Fraudulent Joinder Standard

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). It is well-settled law that "fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). A fraudulent joinder is established "if a defendant shows that an individual joined in the action cannot be liable on any theory." *Grancare,* 889 F.3d at 548 (internal quotations, alterations, and citations omitted). There is a general presumption against finding fraudulent joinder, and thus, a defendant invoking federal court diversity jurisdiction on that basis "bears a 'heavy burden.'" *Id.* The fraudulent joinder "must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

A joinder is fraudulent if a plaintiff fails to state a claim against the non-diverse defendant, and "and the failure is obvious according to the settled rules of the state." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009). The Ninth Circuit has explained that the tests for fraudulent joinder and for a failure to state a claim under Rule 12(b)(6) "are not equivalent." *Grancare*, 889 F.3d at 549. Even if a claim cannot withstand a Rule 12(b)(6) motion, the fraudulent joinder inquiry does not end there. *Id.* at 550. The district court must consider "whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend. *Id.* "[I]f there is a '*possibility* that a state court would find that the complaint states a cause of action against any of the non-diverse defendants,'" the court must find the joinder proper and remand the case. *Id.* at 548 (quoting *Hunter*, 582 F.3d at 1046). "[A]ll disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of remand to state court." *Hunter*, 582 F.3d at 104 at 1042.

### B.     Whether Shak Fraudulently Joined Tomei

Here, Shak alleges a cause of action against Tomei for a hostile work environment violation under the Fair Employment Housing Act ("FEHA") on the basis that Defendants harassed Shak based on her gender and marital status. (Doc. No. 8, FAC ¶¶ 139–40.) Applying the fraudulent joinder analysis, the Court considers whether Defendants have shown that Shak has failed to state a hostile work environment claim against Tomei, and that such failure is "obvious" according to state law and cannot possibly be cured by amendment.  *Hunter*, 582 F.3d at 1043, 1046; *Grancare*, 889 F.3d at 550.

The FEHA prohibits an employer from harassing an employee based on, among other protected groups, the employee's marital status and gender. *See* Cal. Gov't Code § 12940(j)(1). The statute makes harassment by an employee unlawful and allows for harassment claims against individuals. *See* Cal. Gov't Code § 12940(j)(3) ("An employee . . . is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer . . . knows or should have known of the conduct and fails to take immediate and appropriate corrective action."). "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee," *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009), *as modified* (Feb. 10, 2010).

Defendants assert that Tomei has not alleged facts amounting to harassment because the alleged conduct consists solely of personnel management activity such as placing her on a PIP, removing her from prospective business accounts, and rejecting her suggestions or opinions. (Doc. No. 17 at 13–16.) While Defendants are correct that adverse official employment actions do not necessarily constitute harassment, *see Reno v. Baird*, 18 Cal. 4th 640, 646-47 (1998), such actions are not per se shielded from harassment claims. The California Supreme Court has expressly recognized that "in some cases the hostile message that constitutes the harassment is conveyed through official employment actions," and thus, such evidence "can form the basis of a harassment claim." *Roby*, 47 Cal. 4th at 708; *accord*

*Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 705–06 (N.D. Cal. 2014). Consequently, the Court rejects Defendants' argument that Shak cannot state a harassment claim with allegations involving official employment actions.

Upon review of Shak's FAC, the Court finds that Defendants have not established that there is no possibility Shak could show that Tomei's adverse managerial actions towards her had the effect of communicating his hostile message that females are not valued. *See Roby*, 47 Cal. 4th at 708; *Landucci*, 65 F. Supp. 3d at 707. Shak alleges that Tomei attempted to "instill antiquated treatment of women in the workplace, and reinforce alleged ideals that men [] dominate over women." (Doc. No. 8 at ¶ 20.) As examples, Shak asserts that she: (1) presented ideas that Tomei ignored and would only later implement after a male colleague raised the exact same idea; (2) was required to team up with a male colleague and was told to "play nice" with the colleague and "stroke his ego"; (3) was swapped out of large business accounts so her male colleagues could land those deals; and (4) learned that a female colleague was also being targeted by Tomei due to her gender. (*Id.* at ¶¶ 19 – 22, 27.) The Court finds these allegations demonstrate a possibility that a California court would find that the FAC states a cause of action against Tomei. *See Grancare*, 889 F.3d at 549. A district court considering nearly identical issues to those raised here found the same. *See Courtney v. USI Ins. Servs., LLC, et al.*, No. SA-CV-21-01522-CJC, 2021 WL 5356635, at *3 (C.D. Cal. Nov. 16, 2021) ("Viewing the First Amended Complaint in the light most favorable to Plaintiff [], Defendants have not shown that there is no possibility that Plaintiff could show that Tomei's many adverse managerial actions were the means by which he harassed Plaintiff because of her gender.").

Defendants also argue that Shak "has failed to plead facts against Tomei showing severe or pervasive harassment based on gender or marital status." (Doc. No. 17 at 16.) The Court's task on the present motion, however, is not to evaluate whether Tomei's acts were sufficiently severe or pervasive such that Shak will prevail on her claim. Rather, it is to determine whether she has so obviously failed to state a claim under California law that her joinder of Tomei is fraudulent for purposes of jurisdiction. *See Hunter*, 582 F.3d at

1043. As explained above, that is not the case here. In addition, the Court finds unavailing Defendants' argument that Tomei's alleged behavior is not objectively offensive. (Doc. No. 17 at 16.) Again, the Court's job is not to determine if Shak will actually, or even probably, prevail on the merits of her case. Rather, the Court must evaluate whether there is *any possibility* that she may do so. *See Grancare*, 889 F.3d at 548. Defendants have not shown that the statute of limitations bars Shak's hostile work environment claim, nor have they presented "extraordinarily strong evidence or arguments" that she could not possibly prevail on her claim. *Id.* And as previously noted, "all disputed questions of fact and all ambiguities in the controlling state law must be resolved in favor of remand to state court." *Hunter*, 582 F.3d at 104 at 1042. For the aforementioned reasons, the Court finds that Defendants have not satisfied their burden to show that Shak obviously failed to state a hostile work environment claim such that there is no possibility that she could prevail.

Moreover, even if Shak failed to plead facts sufficient to state a claim against Tomei, Defendants have not established that Shak could not amend her pleadings to cure the deficiency. *See Grancare*, 889 F.3d at 549; *Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1028 (C.D. Cal. 2016) ("[R]emand must be granted unless the defendant shows that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency."). Defendants argue that because Shak already amended her original complaint and still fails to state a claim against Tomei, a subsequent amendment would be futile and would not cure the defect. (Doc. No. 17 at 19.) The Court disagrees.[2] As the district court in *Courtney* explained, the Court "is not deciding whether to grant leave to amend here." *See* No. SA-CV-21-01522-CJC, 2021 WL 5356635, at *3 n.5. And although "leave to amend may be futile when a plaintiff fails to cure her complaint after a court has identified its deficiencies on a prior motion to dismiss, the same does not hold when an adversary points out those deficiencies and a court has yet to address them." *Id.*

---

[2] Additionally, Defendants' claim that Shak only sued Tomei in bad faith to destroy diversity is unpersuasive as the record does not establish bad faith.

Thus, Defendants' arguments as to why Shak could not amend her FAC to add more facts to buttress her harassment claim are unavailing.

For the reasons stated herein, the Court finds that Defendants have not met their "heavy burden" to show that there is no possibility that a state court would find that the FAC states a cause of action against Tomei and that a deficiency cannot possibly be cured by amendment. *See Grancare*, 889 F.3d at 549–50. Consequently, the Court finds Tomei's joinder proper and destroys complete diversity for purposes of subject matter jurisdiction. The Court must therefore remand the case to state court. *See id.* at 548.

## IV.   CONCLUSION

Based on the foregoing, Defendants have failed to establish that the Court has subject matter jurisdiction over this action. Accordingly, Shak's motion to remand is **GRANTED** (Doc. No. 11), and Defendants' motion to dismiss is **DENIED AS MOOT** (Doc. No. 13). The Clerk of Court is instructed to **REMAND** this case to the Superior Court of California, San Diego County.

**IT IS SO ORDERED**.

Dated: February 15, 2022

Hon. Anthony J. Battaglia
United States District Judge